UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILTER OBONDI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-2022-B |
| | § | |
| UT SOUTHWESTERN MEDICAL | § | |
| CENTER, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's Original Complaint (Doc. 5).

For the following reasons, the Court GRANTS in part and DENIES in part Defendant's Motion.

I.

BACKGROUND

This is an employment discrimination case. Plaintiff Wilter Obondi (Obondi) is a Registered

Cardiovascular Invasive Specialist (RCIS) and works for the University of Texas Southwestern

Medical Center (UT Southwestern) as a Cardiac Cath Lab IR Lab Technologist (i.e., a lab tech) in

Interventional Cardiology.[1] Doc. 10, Pl.'s Resp. ¶ 101.[2] She has worked there in that capacity since

May 2006. *Id.* Sometime between May 2006 and September 2013, Nikki Rupe (Rupe) began

---

[1] Presumably, to work as a lab tech in the Cardiac Cath Lab, one must be an RCIS or the two positions are essentially the same. Obondi's Complaint states that she was hired as an RCIS, and her Response states that she was hired as a lab tech. *Compare* Doc. 1, Pl.'s Orig. Compl. ¶ 18, *with* Doc. 10, Pl.'s Resp. ¶ 101.

[2] Plaintiff filed two responses to UT Southwestern's Motion to Dismiss (Docs. 9 & 10). These responses appear identical, so the Court will consider and reference the second response filed—Doc. 10.

managing the unit in which Obondi worked. Doc. 1, Pl.'s Orig. Compl. ¶¶ 19–21. Obondi alleges

Rupe mistreated her because Obondi's national origin is Kenyan; essentially, she makes a claim of

national origin discrimination. *Id.* Examples of Rupe's alleged discrimination include: (1) "demoting

[Obondi] from a team leader position to a regular technologist [position]"[3] on or about October 10,

2012;[4] (2) routinely assigning her tasks that "she is not qualified to perform and which should have

been assigned to different technologists"; (3) "routinely talking in a harsh, hostile manner towards

[her] that she does not use toward other employees in the Unit";[5] (4) "giving [her] lower raises than

her non-Kenyan counterparts"; (5) "not paying [her] the same as she pays [her] non-Kenyan

counterparts";[6] and (6) continuously making demeaning remarks, ridiculing statements, negative

comments, and negative innuendos toward her. *Id.* ¶ 23.

      To remedy this discrimination, Obondi says she first complained to Rupe; then, on September

4, 2013, to Rupe's supervisor and to Human Resources (HR); and finally, two months later, to the

Employee Assistance Program (EAP). *Id.* ¶¶ 27–28, 31.[7] All to no avail—Obondi maintains that UT

---

[3] Generally, a team leader position is not a separate role altogether; rather, a team leader works as a member of a team but also performs additional leadership duties. At UT Southwestern, it appears that team leaders receive additional compensation for performing these additional duties. Doc. 1, Pl.'s Orig. Compl. ¶ 23 ("[D]emoting Plaintiff from a team leader position to a regular technologist . . . resulted in a corresponding reduction in pay.").

[4] This date comes from UT Southwestern's Brief in Support of its Motion to Dismiss. Doc. 6, Def.'s Br. in Supp. 10. The Court did not find it in any of Obondi's papers.

[5] Obondi is one of eleven lab techs in the unit; she is the only Kenyan lab tech. Doc. 1, Pl.'s Orig. Compl. ¶ 22.

[6] Obondi alleges that she "is the lowest paid RCIS with the largest amount of employment responsibilities." Doc. 1, Pl.'s Orig. Compl. ¶ 55.

[7] Though unclear from the Complaint, EAP likely exists as an HR program, so a complaint to EAP essentially is an HR complaint.

Southwestern took no action to address her grievances, but rather suggested she change jobs. *Id.*

After lodging her complaints, Obondi claims UT Southwestern retaliated. *Id.* ¶ 32. It allegedly: (1) failed to provide equal pay for Obondi; (2) changed her work conditions; (3) assigned her more work than she could complete within a work day; (4) micro-managed her; (5) applied written policies to her in a discriminatory manner; and (6) failed to remedy known harassment issues. *Id.* ¶ 33.[8] Further, Obondi claims she received a written reprimand in retaliation on or about November 26, 2013. *Id.* ¶ 34–35.

Next, Obondi filed a Charge of Discrimination (Charge) with the United States Equal Employment Opportunity Commission (EEOC) on February 13, 2014. *Id.* ¶ 36. In March 2015, she received a Notice of Rights Letter from the EEOC and within ninety days filed her Complaint with this Court claiming various federal and state law violations. *Id.* ¶¶ 37–38. These include:

- National origin discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C § 2000e *et seq.*;

- Pay disparity under: Title VII, 42 U.S.C. § 2000e-2(a); the Lilly Ledbetter Fair Pay Act of 2009 and its counterpart 42 U.S.C. § 1981; and the Equal Pay Act of 1963 (Equal Pay Act), 29 U.S.C. § 206;

- Disparate treatment under Title VII, 42 U.S.C. § 2000e-2 and 42 U.S.C. § 1981;

- Disparate impact under Title VII, 42 U.S.C. § 2000e-2(a);

- Hostile work environment under Title VII and the Texas Commission on Human Rights Act (TCHRA), Tex. Labor Code Ann. § 21.001 *et seq.*;

- Mental abuse under Texas law; and

- Retaliation under Title VII, the Equal Pay Act, and the TCHRA.

---

[8] Obondi's Complaint also lists her examples of discrimination as examples of retaliation. *Compare* Doc. 1, Pl.'s Orig. Compl. ¶ 23, *with id.* ¶ 33.

Doc. 1, Pl.'s Orig. Compl. ¶¶ 41–48, 49–56, 57–63, 64–70, 71–84, 85–110, 111–119; *see also* Doc. 6, Def.'s Br. in Supp. 1–2.

On August 7, 2015, UT Southwestern moved to dismiss all of Obondi's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 5. Obondi responded, and, in her Response, "voluntarily waive[d] her Texas Labor Code Claims brought under the TCHRA", "her Section 1981 Claims", and "her Disparate Impact Claim." Doc. 10, Pl.'s Resp. ¶¶ 201, 202, 222. Also, in her Response, Obondi stated that she had "not asserted a 'stand alone' claim for Mental Abuse"; rather, she maintains that she asserted a "pattern of conduct which includes mental abuse contributing to a hostile work environment." *Id.* ¶ 203. Accordingly, the Court DISMISSES Obondi's TCHRA claims, section 1981 claims, disparate impact claims, and mental abuse claim.[9] This disposes of every claim UT Southwestern challenged pursuant to Rule 12(b)(1) leaving only its Rule 12(b)(6) challenges to: Obondi's Title VII claims for national origin discrimination, pay disparity, disparate treatment, hostile work environment, and retaliation; and her Equal Pay Act claims for pay disparity and retaliation. UT Southwestern has replied. Doc. 11. Its Motion to Dismiss is therefore ready for review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file

---

[9] This dismisses any "stand alone" claim for mental abuse; however, the Court may consider mental abuse as part of the totality of the circumstances surrounding Obondi's hostile work environment claim.

a motion to dismiss. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014). That means "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

III.

ANALYSIS

Obondi's remaining claims spring from either Title VII or the Equal Pay Act. The Court addresses each in turn.

A.      *Title VII Claims*

Obondi's remaining Title VII claims are for national origin discrimination, pay disparity, disparate treatment, hostile work environment, and retaliation. UT Southwestern challenges: (1) whether the portion of her claims based on her alleged demotion are time-barred; (2) whether evidence of her alleged demotion can support her hostile work environment claim; (3) whether she pleaded sufficient facts to state a hostile work environment claim; and (4) whether she pleaded sufficient facts to state a pay disparity claim.

1.      Statute of Limitations

Title VII provides that an unlawful employment practice charge shall be filed with the EEOC "within *one hundred and eighty days* after the alleged unlawful employment practice occurred . . . [or] within *three hundred days* after" if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e) (emphasis added); *see also Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 554 (5th Cir. 1987).[10] Here, Obondi filed her Charge with the EEOC on February 13, 2014, which limits her Title VII claims to conduct that occurred after April 19, 2013. So the Court must now look at the timing of the alleged conduct

---

[10] Texas is a "referral state," meaning that it has a "State or local agency with authority to grant or seek relief from [discriminatory] practice[s] or to institute criminal proceedings with respect thereto upon receiving notice thereof." *See* 42 U.S.C. § 2000e-5(e)(1); *Decker v. Univ. of Hous.*, 970 F. Supp. 575, 578 (S.D. Tex. 1997). The Fifth Circuit has held that the "requirement that persons aggrieved must initially institute proceedings with the state referral agency is met by the EEOC's routine transmittal of a copy of the complaint to the state referral agency." *Messer v. Meno*, 130 F.3d 130, 134 n.2 (5th Cir. 1997) (quoting *Urrutia v. Valero Energy Corp.*, 841 F.2d 123, 125 (5th Cir. 1988)). Neither party disputes that the EEOC transmitted a copy of Obondi's complaint to the Texas Commission on Human Rights, though this is not clear from the face of the Complaint before this Court (Doc. 1); therefore, the default limitations period for filing with the EEOC in this case is three hundred days.

underlying Obondi's claims, specifically her October 2012 demotion, which she says evidences national origin discrimination, retaliation, and a hostile work environment.

Clearly, Obondi's demotion occurred before August 2013. UT Southwestern argues this time-bars any related discrimination claims, and that it cannot be used as evidence of retaliation or a hostile work environment. Doc. 6, Def.'s Br. in Supp. 10. Obondi counters that the demotion came as part of an "ongoing course of conduct over a period of years" and should not be time-barred. Doc. 10, Pl.'s Resp. ¶ 215. This is essentially a "continuing violation" argument. Under the continuing violation theory, when a plaintiff can show that "the cumulative effect of [a] discriminatory practice, rather than any discrete occurrence, . . . gives rise to the cause of action," not all of the discriminatory conduct must occur within the limitations period to be actionable. *Huckabay v. Moore*, 142 F.3d 233, 238–39 (5th Cir. 1998). A demotion, however, is a "[d]iscrete act" that "constitutes a separate actionable unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (internal quotation marks omitted); *see also Shryer v. Univ. of Tex. Sw. Med. Ctr. at Dall.*, 587 F. App'x 151, 156 n.4 (5th Cir. 2014). Thus, if a plaintiff does not file an EEOC charge within three hundred days of a demotion, she loses the right to sue for it. *See Morgan*, 536 U.S. at 114–15. Therefore, Obondi should have no right to sue for her October 2012 demotion.

That being said, a court may consider only certain documents outside of the pleadings when analyzing a Rule 12(b)(6) motion. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). These documents must be referred to in the plaintiff's pleadings and be central to the plaintiff's claims. *Id.* Whereas, if a court considers matters outside the pleadings, it must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

Deciding whether the proper procedural vehicle for resolving an issue is Rule 12(b)(6) or

Rule 56 is within the discretion of the court, driven by whether the court deems it appropriate to consider materials outside of the pleadings otherwise inappropriate for a Rule 12(b)(6) analysis. *See generally, St. Paul Ins. Co. of Bellaire, Tex. v. AFIA, Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir. 1991). The Fifth Circuit has said that "certain affirmative defenses that *clearly appear on the face of the plaintiff's complaint*—most commonly that the statute of limitations has run—may properly be asserted in a Rule 12(b)(6) motion." *Songbyrd, Inc. v. Bearsille Records, Inc.,* 104 F.3d 773, 776 n.3 (5th Cir. 1997) (emphasis added) ("Although defenses are generally not the proper subject of Rule 12(b)(6) motions.").

Here, the Court draws the date of Obondi's demotion from UT Southwestern's briefing, not Obondi's pleadings. *Supra* note 4. Thus, the Court finds that it cannot determine if claims based on Obondi's demotion are time-barred from the face of Obondi's Complaint. To rule on this issue would force the Court to consider materials outside the pleadings, which is not appropriate in a Rule 12(b)(6) analysis. Accordingly, the Court DENIES this portion of UT Southwestern's Motion to Dismiss without prejudice. It may refile this defense in its Rule 56 Motion for Summary Judgment.

    2.    <u>Hostile Work Environment Claim</u>

In order to make out a hostile work environment claim under Title VII, an employee must show that she: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race, color, religion, sex, or national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 651 (5th Cir. 2012). "To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a

reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). To determine whether this is the case, the Court must consider the totality of the circumstances. *See id.*

First, UT Southwestern argues that "discrete acts such as demotions and terminations do not qualify as predicate act [*sic*] supporting a hostile work environment claim," so Obondi cannot use them "to support her hostile work environment claim." Doc. 6, Def.'s Br. in Supp. 11. But in making this argument, it cites to cases that address how discrete acts fall outside of the "continuing violation doctrine" discussed above. These cases do not stand for the proposition that courts cannot consider discrete acts as background for a hostile work environment claim. *See, e.g., Huckabay*, 142 F.3d at 239 ("[T]he continuing violation doctrine may apply only, if at all, to the hostile environment claim, rather than to the specific instances of demotion and failure to promote.").

Obondi responds that the Court may consider her demotion as part of the totality of the circumstances. Doc. 10, Pl.'s Resp. ¶ 217. She is correct.

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Because each discrete act starts a new clock for filing charges alleging that act, the charge must be filed within the 180– or 300–day period after the act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. *Nor does the statute bar an employee from using the prior acts as background evidence to support a timely claim.*

*Morgan*, 536 U.S. at 102 (emphasis added). Therefore, the Court DENIES this portion of UT Southwestern's Motion to Dismiss.

Second, UT Southwestern argues that Obondi did not sufficiently plead her hostile work environment claim; rather, it maintains that she provided a mere "formulaic recitation of elements."

Doc. 6, Def.'s Br. in Supp. 19. As to the first element of a hostile work environment claim, it is undisputed that Obondi belongs to a protected group: Kenyans.

As to elements two through four, Obondi clearly alleges that she suffered general ridicule, insults, rumors, mistreatment, and hostility as a result of her Kenyan national origin. *See generally* Doc. 1, Pl.'s Orig. Compl. ¶¶ 71–84. She even alleges specific events that demonstrate this mistreatment. *See, e.g., id.* ¶ 74 ("Defendants' managers, supervisors and others actively sought to paint a demeaning picture of employees like Plaintiff whose national origin is Kenyan."). Less clear, however, is whether she sufficiently alleged that the harassment affected a term, condition, or privilege of employment. To find this, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez*, 670 F.3d at 651. The Court must consider the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Here, Obondi has pleaded continuous, pervasive harassment of ranging severity, that taken as true and viewed in the light most favorable to Obondi, sufficiently shows that her claim has substantive plausibility. For example, Obondi alleges that the "ridicule, insults, rumors and innuendos increased at the workplace, to the point where [she] was overwhelmed and exhausted thereby aggravating Plaintiff's medical conditions." Doc. 1, Pl.'s Orig. Compl. ¶ 77. She also alleges that she has suffered mental abuse from bullying and intimidation. *See generally id.* ¶¶ 85–110. From this, considering the totality of the circumstances, the Court can draw the reasonable inference that the defendant is liable for the misconduct alleged.

Finally, as to the fifth element, if the harassment was committed by a supervisor with immediate or successively higher authority over the victim, then a plaintiff need only make a showing as to the first four elements. *See Celestine v. Petroleos de Venezuela, S.A.*, 266 F.3d 343, 353 (5th Cir. 2001), *abrogated on other grounds by Nat'l R.R. Passenger Corp.*, 536 U.S. at 114. Obondi has sufficiently pleaded this by alleging that Rupe, her immediate supervisor, was a key player in her harassment. Thus, the fifth element does not apply, and Obondi has sufficiently pleaded a hostile work environment claim. Therefore, the Court DENIES this portion of UT Southwestern's Motion to Dismiss.

### 3.     Pay Disparity under Title VII

In order to make out a pay disparity claim under Title VII, an employee must show that: (1) she belongs to a protected group; (2) she was paid less than another employee who does not belong to the same protected group; and (3) that employee performs work requiring substantially the same responsibility. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008) (citing *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984)). Said differently, an employee must show that her "circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Id.* at 523.

As discussed above, Obondi belongs to a protected group. Rather than attack this, UT Southwestern targets Obondi's pleadings because she "has failed to identify a similarly situated 'non-Kenyan' employee who was paid more than she for the same work." Doc. 6, Def.'s Br. in Supp. 18. If true, this would mean Obondi did not plead several elements of her Title VII pay disparity claim; however, Obondi has both identified similarly-situated non-Kenyan employees with substantially the same responsibilities, and alleged that they are paid more (i.e., she is paid less). Specifically, Obondi

- 11 -

pleaded that she is one of eleven lab techs (or RCIS, *see supra* note 1), none of whom are Kenyan. Doc. 1, Pl.'s Orig. Compl. ¶ 22. She also pleaded that of all the RCIS employed by UT Southwestern, she was paid the lowest despite having the most employment responsibilities. *Id.* ¶ 55. Accepting these facts as true and viewing them in the light most favorable to Obondi, the Court concludes that she has identified other non-Kenyan employees whose work requires substantially the same responsibility but who are paid more. Therefore, the Court DENIES this portion of UT Southwestern's Motion to Dismiss.

B.      *Equal Pay Act Claims*

        Obondi's remaining Equal Pay Act claims are for pay disparity and retaliation. UT Southwestern challenges these claims, arguing that the Equal Pay Act protects against sex-based discrimination and that Obondi has pleaded pay disparity as "the result of her national origin rather than her gender." Doc. 6, Def.'s Br. in Supp. 18.

        The purpose of the Equal Pay Act is to ensure that individuals of different sexes are paid equal wages for performing equal work. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). An essential element of any Equal Pay Act claims is demonstrating a pay disparity between employees of the opposite sex. *See id.*; *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993). Here, Obondi's case turns on national origin discrimination. Throughout her Complaint, she continuously references her national origin as the basis for any alleged discrimination, retaliation, pay disparity, or hostile work environment. *See, e.g.*, Doc. 1, Pl.'s Orig. Compl. ¶ 20 ("Ms. Rupe and Defendant's mistreatment of Plaintiff is because Plaintiff's national origin is Kenyan."); *id.* ¶ 26 ("[T]he Unit Manager treats Plaintiff differently because of 'cultural issue [*sic*].'"); *id.* ¶¶ 45–47 ("Ms. Obondi is treated differently from her other, non-Kenyan co-workers . . . . was demoted from Team Leader to

a Technician because of her national origin . . . . [and] is paid less than other employees, and receives smaller salary increases because of national origin."). Nowhere in her Complaint does she allege that UT Southwestern treated her differently because she was a woman. Therefore, the Court GRANTS this portion of UT Southwestern's Motion to Dismiss and DISMISSES Obondi's Equal Pay Act claims for pay disparity and retaliation.

IV.

CONCLUSION

For these reasons, the Court GRANTS in part and DENIES in part UT Southwestern's Motion to Dismiss (Doc. 5). Obondi's TCHRA claims, section 1981 claims, disparate impact claims, and mental abuse claim are DISMISSED with prejudice as she has voluntarily waived them. Obondi's Equal Pay Act claims are DISMISSED without prejudice. The Court DENIES the Motion as to Obondi's remaining claims.

Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears certain that such repleading would be futile. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("[A] court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). Since this Order is the Court's first review of Obondi's allegations, the Court concludes that she should be given the opportunity to replead her Equal Pay Act claims.

If she is able to replead and overcome the grounds for dismissal stated herein, she should do so by no later than thirty (30) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than ten (10) pages, explaining how the amendments overcome the grounds stated for dismissal in this Order. Should Obondi replead, UT Southwestern

- 13 -

is hereby granted leave to file a response to her synopsis. Any response shall not exceed ten (10)

pages and must be filed within fourteen (14) calendar days of the repleading. No further briefing will

be permitted.


SO ORDERED.

SIGNED: February 29, 2016.


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE